UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAYLA REEFER,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant.*

No. 23-cv-03099 (DLF)

**MEMORANDUM OPINION AND ORDER**

Shayla Reefer, a former Criminal Research Specialist for the District of Columbia Metropolitan Police Department (MPD), brings this employment action against the District of Columbia. Before the Court is the District's Motion to Dismiss or for a More Definite Statement, Dkt. 24. For the reasons that follow, the Court will deny the motion.

I.    BACKGROUND

Soon after starting her position with MPD as Criminal Research Specialist, Reefer began experiencing "difficulty with her after-work sleep," Sec. Am. Compl. ¶¶ 13, 16, Dkt. 19, and "strange paralytic episodes at work." *Id.* ¶ 17. Around July 3, 2020, she applied for reasonable accommodation under the Americans with Disabilities Act (ADA) for several diagnoses: "loss of concentration, sleeplessness, major depression, ADHD, Post Traumatic Stress Disorder," and "[a]nxiety." *Id.* ¶ 23.

On July 26, while commuting to work, Reefer had a "seizure-like" episode which caused a car accident. *Id.* ¶ 39. Afterwards, she continued to seek reasonable accommodation. *Id.* ¶ 40. On September 1, while working at home, she suffered a "more pronounced seizure-like episode"

requiring emergency support. *Id.* ¶ 43. Because the District had not granted her requested accommodation, Reefer began short-term disability leave on September 3. *Id.* ¶ 45.

In January 2021, Reefer was diagnosed with "a circadian rhythm disorder." *Id.* ¶ 19. Reefer defines the disorder as the "daily . . . cycle of physical and mental behaviors . . . which impact individuals['] biological clocks . . . responsible for producing 'circadian rhythms.'" *Id.* ¶ 21. She alleges that her disorder "interfere[s] with functionality, concentration, [and] consciousness," *id.* ¶ 57, "manifest[s] by seizure-like spells," *id.*, and was provoked by her "unreliable night shift hours," *id.* ¶ 20.

Reefer's employment responsibilities included "answering a high volume of phone calls," "notifying MPD upper management of . . . incidents reported," and "monitoring all radio traffic for her assigned District." *Id.* ¶ 14. Because Reefer was "required to be conscious and alert throughout her work shift," *id.* ¶ 19, her disorder interfered with her ability to perform "material functions during her seizure-like states of 'semi-consciousness,'" *id.* According to Reefer's neurologist, her disorder was "triggered by the impact of inconsistent and unreliable" work hours, *id.* ¶ 19, and "resolvable by modification/adjustment of work shift hours," *id.* ¶ 20. Under such medical advice, she reapplied for the accommodation of "a shift change to daytime work with reliable hours" on January 8. *Id.* ¶¶ 24, 26. Reefer alleges that this accommodation "would address" her disorder and render her "fully able to perform all the duties and responsibilities of her job." *Id.* ¶¶ 26.

On January 25, the District fired Reefer for the "gross misconduct" of contacting Human Resources and Payroll against instructions. *Id.* ¶ 51. Reefer alleges that the District "never activated the interactive process of negotiation in good faith" in response to her accommodation requests. *Id.* ¶ 28. Instead, the District "aggressively requested more and more information from

[her]," *id.* ¶ 29, and "falsely claimed [her] performance was substandard," *id.* ¶ 34.  None of Reefer's performance evaluations stated that her work was "defective, deficient, or otherwise wanting before [she] requested reasonable accommodation."  *Id.* ¶ 22.  And while her disorder made it difficult to perform "some of her duties and responsibilities," *id.*, Reefer alleges she "worked hard and performed at a very high level during her conscious . . . performance," *id.* ¶ 42.

Reefer's operative Complaint, Dkt. 19, alleges denial of reasonable accommodation and unlawful retaliation under the ADA, *see* 42 U.S.C. § 1211 *et seq.*, and the D.C. Human Rights Act (DCHRA), *see* D.C. Code § 2-1401 *et seq*.  The District moves to dismiss both counts for failure to state a claim or, in the alternative as to Count I, moves for a more definite statement.  *See* Dkt. 24.

II.     **LEGAL STANDARDS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).  But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings.

*Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Rule 12(e) allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement is appropriate "when a defendant is unclear about the meaning of a particular allegation in the complaint." *Thorp v. District of Columbia*, 309 F.R.D. 88, 90 (D.D.C. 2015) (citation modified). Rule 12(e) motions are not a "substitute for discovery," *Potts v. Howard Univ.*, 269 F.R.D. 40, 42 (D.D.C. 2010), and are granted "only where the Complaint is so egregiously deficient that the allegations are entirely inscrutable or incomprehensible," *Jenkins v. Mason Harriman Grp.*, No. 23-cv-629 (RCL), 2023 WL 11837455 at *2 (D.D.C. Dec. 14, 2023). As under Rule 8(a), *see* Fed. R. Civ. P. 8(a); *Potts*, 269 F.R.D. at 42, "a plaintiff need not allege all facts necessary to prove its claim so long as [she] provides enough factual information to make clear the substance of that claim," *Wilson v. Gov't of D.C.*, 269 F.R.D. 8, 12 (D.D.C. 2010) (quoting *Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).

**III.   ANALYSIS**

**A. Denial of Reasonable Accommodations**

To state a claim under the ADA[1] for denial of reasonable accommodations, a plaintiff must allege that "(1) she was a qualified individual with a disability; (2) the employer had notice of her disability; and (3) the employer denied her request for a reasonable accommodation." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (citation modified). The District

---

[1] The Court analyzes DCHRA claims with the same standard as ADA claims. *See Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153 (D.D.C. 2013).

4

contends that Reefer has not plausibly alleged that she was either qualified or disabled. *See* Mot. to Dismiss at 1, Dkt. 24-1. Alternatively, the District contends Reefer should be required to make a more definite statement as to whether "her seizure-like episodes have ceased and, if so, when." *Id.* at 12. The Court disagrees.

1. **Qualified Individual**

An individual is "qualified" if she can "perform the essential functions" of her employment "with or without reasonable accommodation." 42 U.S.C. § 12111(8). If a plaintiff cannot perform her work unaccommodated, a plaintiff must show that "with a reasonable accommodation . . . [s]he can perform the essential functions of the job." *Saunders v. Galliher & Huguely Assocs.*, 741 F. Supp. 2d 245, 248 (D.D.C. 2010) (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)). The plaintiff must establish she was qualified "at the time the employer denied her request for accommodation." *Minter v. District of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015).

The District contends that because Reefer did not claim her seizures abated after taking disability leave in 2020, she has failed to show an ability to perform her work's essential functions with reasonable accommodation. *See* Mot. to Dismiss at 9–10. None of Reefer's employment functions—answering phone calls, reporting emergencies, and monitoring radio traffic, Sec. Am. Compl. ¶ 14—could be performed during "seizure-like states of 'semi-consciousness,'" *id.* ¶ 19. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 584 (5th Cir. 2020) ("[M]aintaining consciousness is a basic element of any job."). Even so, these seizure-like states and Reeder's disorder were "provoked" by her work's night-shift hours. Sec. Am. Compl. ¶ 24. And her doctor concluded that with her requested accommodation—"a shift change to daytime work with reliable hours," *id.* ¶ 26—she could "fully . . . perform all of the duties and responsibilities of her job description," *id.*

Drawing all reasonable inferences in Reefer's favor, *see Hettinga*, 677 F.3d at 476, as the Court must, she has alleged sufficient facts to support her claim that "a shift change to daytime work with reliable hours" would have allowed her to remain conscious and alert. *See* Sec. Am. Compl. ¶ 26, 19. Ultimately, Reefer may fail to prove that she was qualified. But at least at this stage, she has adequately alleged that she could perform the essential functions of her position with a reasonable accommodation. *See Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 95 (D.D.C. 2021).

### 2. Disability

A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA explicitly directs that this definition "shall be construed in favor of broad coverage." *Id*. § 12102(4)(A). The impairment need only "substantially limit[] the ability of an individual . . . as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Reefer has sufficiently alleged a disability. Her circadian rhythm disorder is an impairment which substantially limits her ability to work. *See* Sec. Am. Compl. ¶¶ 57, 19; 42 U.S.C. § 12102(2)(A) (by statutory definition, "working" is a "major life activity"). Although "[Reefer's] inability to remain conscious for certain portions of the day" does not substantially limit her ability to work "a broad range of jobs of various classes," *see* Mot. to Dismiss at 8 (citation modified), her seizure-like episodes caused a car accident while commuting to work, *see* Sec. Am. Compl. ¶ 39, and required emergency medical care while working at home, *see id.* ¶ 43. Neither of those episodes were tied to "the particular demands of [Reefer's] position." *Abdul-Azim v. Howard*

6

*Univ. Hosp.*, 213 A.3d 99, 102 (D.C. 2019).  As alleged, Reefer's disorder substantially limits her ability to work jobs which require consciousness—as most jobs do, *see Clark*, 952 F.3d at 584.

Because Reefer has plausibly alleged that she is both qualified and disabled, the Court will deny the District's motion to dismiss Count I.

### 3. More Definite Statement

In the alternative, the District asks the Court to order Reefer to plead whether "her seizure-like spells ceased after she stopped working the night shift."  Mot. to Dismiss at 12; *see* Fed. R. Civ. P. 12(e).  The District does not assert that Reefer's complaint is vague or ambiguous.  *See* Fed. R. Civ. P. 12(e).  Rather, it asks Reefer to prove that she was qualified.  *See* Mot. to Dismiss at 12.  *But see Wilson*, 269 F.R.D. at 12 (quoting *Caribbean Broad. Sys.*, 148 F.3d at 1086) ("[A] plaintiff need not allege all facts necessary to prove its claim so long as [she] provides enough factual information to make clear the substance of that claim.").  As explained in Section III.A.1, *supra*, Reefer has sufficiently alleged that she is qualified.  Thus, the Court will deny the District's motion for a more definite statement.

### B. Unlawful Retaliation

To state a disability-retaliation claim under the ADA, a plaintiff must show that "(1) [s]he engaged in protected activity; (2) [s]he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action."  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citing *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005)).  To satisfy the first element, the plaintiff must show that she was disabled, *cf. Vogel v. D.C. Office of Plan.*, 944 A.2d 456, 464 (D.C. 2008), or that she had a reasonable "good faith" belief that she was disabled, *cf. Howard Univ. v. Green*, 652 A.2d 41, 46 (D.C. 1994).

The District contends Reefer did not demonstrate a disability nor a "good faith" belief. *See* Mot. to Dismiss at 10. But as explained in Section III.A.2, *supra*, Reefer plausibly alleged a disability. Thus, the Court will deny the District's motion to dismiss the unlawful retaliation claim.

Accordingly, it is

**ORDERED** that the defendant's Motion to Dismiss, Dkt. 24, is **DENIED**. It is further

**ORDERED** that the defendant's Motion for a More Definite Statement, Dkt. 24, is **DENIED**.

**SO ORDERED.**

July 11, 2025

_____
DABNEY L. FRIEDRICH
United States District Judge